IHG Harlem I LLC v 406 Manhattan LLC (2024 NY Slip Op 00164)

IHG Harlem I LLC v 406 Manhattan LLC

2024 NY Slip Op 00164

Decided on January 16, 2024

Appellate Division, First Department

KAPNICK, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 16, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Jeffrey K. Oing
Peter H. Moulton
 Barbara R. Kapnick 
 John R. Higgitt

Index No. 161863/15 Appeal No. 774-775 Case No. 2022-05636, 2022-05637 

[*1]IHG Harlem I LLC, Plaintiff-Appellant,
v
406 Manhattan LLC et al., Defendants-Respondents.

Plaintiff appeals from the judgment of the Supreme Court, New York County (Lynn R. Kotler, J.), entered November 14, 2022, in favor of plaintiff, and bringing up for review an order, same court and Justice, entered on or about March 1, 2022, which, to the extent appealed from, denied plaintiff statutory interest in directing the return of its deposits held in escrow.

Law Offices of Jacob S. Feinzeig, Brooklyn (Jacob S. Feinzeig of counsel), for appellant.
Lester Korinman Kamran & Masini, P.C., Garden City (Gabriel R. Korinman of counsel), for respondents.

KAPNICK, J. 

At issue in this appeal is whether the parties' contract language specifying that purchaser's "sole remedy" in the event of sellers' breach is the return of its downpayment constitutes a clear waiver of CPLR 5001 (a) as defined by the Court of Appeals in J. D' Addario & Co., Inc. v Embassy Indus., Inc. (20 NY3d 113 [2012]) and requires denying the nonbreaching party statutory prejudgment interest. For the reasons that follow, we conclude that it does not and hold that CPLR 5001 (a) requires that plaintiff IHG Harlem I LLC, the nonbreaching purchaser, be awarded prejudgment interest on its $626,250.00 downpayment, at the statutory rate of 9% from November 12, 2015, through November 16, 2022.
Defendants 406 Manhattan LLC and BX524 LLC,[FN1] as sellers, and plaintiff IHG Harlem I LLC, as purchaser, entered into three largely identical contracts of sale that required defendants to, inter alia, obtain assignments of the mortgages on the three relevant properties. Defendants did not obtain the assignments by the time they issued a time of the essence letter or by the time they set for the closing, and thus this Court found, in a prior appeal in this case, that defendants breached the contracts (see IHG HARLEM I, LLC v 406 Manhattan LLC, 200 AD3d 417, 418 [1st Dept 2021]). This Court further held that "[t]he contracts provided that if defendants refused or failed to convey the properties, plaintiff 'shall elect as its sole and exclusive remedy' either termination of the contract and the return of its deposits or enforcement of defendants' obligation to convey the property by seeking specific performance. As plaintiff has elected not to seek specific performance, its sole remedy is the return of its deposits" (id. at 418).
The sole remaining issue, and the subject of this appeal, is whether plaintiff is entitled to statutory interest on the return of its deposit, or, by the language in the contracts, it waived its right to collect prejudgment interest. The issue of statutory interest is not barred by law of the case as there is no indication in either this Court's prior order or anywhere in the record that this issue was previously litigated by the parties or decided by this or any other Court. The issue only arose when the parties each presented their proposed judgments to Supreme Court for signature after our decision of December 2, 2021 (id. at 417). Plaintiff requested that Supreme Court [*2]enter judgment against defendants for the amount being held in escrow, plus interest from November 12, 2015 through November 16, 2022. Instead, Supreme Court signed the counter judgment submitted by defendants directing that the funds being held in escrow be returned to plaintiff without interest.[FN2]
In its decision denying plaintiff prejudgment interest, the motion court relied on J. D'Addario and Sommer v General Bronze Corp. (28 AD2d 981 [1st Dept 1967], affd 21 NY2d 775 [1968]) stating that:
"In J. D'Addario, the Court of Appeals affirmed the First Department's decision which vacated the trial court's award of statutory interest on the return of a deposit because the parties agreed the seller would have no further rights once the down payment was paid as liquidated damages and the contract required the deposit be held in an interest-bearing account. Meanwhile, in Sommer, the First Department explicitly held that where a contract of sale limited liability to the amount of the down payment, money damages equivalent to the amount of the down payment or interests on that amount were not warranted . . . J. D'Addario and Sommer are squarely on point and since this court is bound to follow its precedent, the court will sign the judgment proposed by defendants which does not award plaintiff a money judgment."
The motion court further concluded that denying plaintiff statutory interest "is consistent with [the] First Department's decision/order in this case, which expressly did not award plaintiff a money judgment nor interest thereon" (id.). On its appeal from Supreme Court's order and judgment, plaintiff asserts that the court erred by employing too broad a reading of these decisions and we agree.
CPLR 5001(a) provides that prejudgment interest "shall be recovered upon a sum awarded because of a breach of performance of a contract" (emphasis added). The legislature's use of the term "shall" "import[s] duty, not discretion" (Jiggetts v Grinker, 75 NY2d 411, 417 [1990]). The principle behind awarding statutory interest on amounts in escrow is not to punish the breaching party, but rather to compensate the wronged party for the loss of use of their money (see NML Capital v Republic of Argentina, 17 NY3d 250, 266 [2011]). "The breaching party is required to pay interest despite lacking possession or enjoyment of the property in order 'to make [the] aggrieved party whole' " (J. D'Addario, 20 NY3d at 118, quoting Spodek v Park Prop. Dev. Assoc., 96 NY2d 577, 581 [2001]).
However, courts have declined to award statutory prejudgment interest in a small set of cases where it can be established that the nonbreaching party has otherwise been made whole, including where the parties have "contracted around" CPLR 5001(a) or where interest would amount to a windfall to the nonbreaching party (see Vigilant Ins. Co. v MF Global Fin. USA Inc., 215 AD3d 578, 581 [1st Dept 2023], citing J. D'Addario, 20 NY3d at 118-119). In J. D'Addario, the Court of Appeals determined [*3]that regardless of what CPLR 5001 (a) requires, the freedom of parties to a civil dispute to "chart their own course" and fashion "how damages are to be computed without interference by the courts" is paramount (20 NY3d at 119, quoting Town of Orangetown v Magee, 88 NY2d 41, 54 [1996]). "[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms" (J. D'Addario, 20 NY3d at 118, quoting W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]). The Court of Appeals' holding that a party's statutory right to interest can be waived only if the allegedly waiving parties clearly manifest their intent to do so comports with the requirements for waivers in other contexts (see e.g. Navillus Tile v Turner Constr. Co., 2 AD3d 209, 211 [1st Dept 2003] ["the intent to waive a right must be unmistakably manifested, and is not to be inferred from a doubtful or equivocal act"] quoting Orange Steel Erectors v Newburgh Steel Prods., 225 AD2d 1010, 1012 [3d Dept 1996]). Such a clear manifestation of a waiver of statutory prejudgment interest is not found in this case.
In each of the three contracts of sale, section 2.03 specifically provided that plaintiff's downpayment, totaling $626,250.00, was:
"[T]o be paid by check or checks drawn to the order of and delivered to Seller's attorney, as escrow agent ("Escrowee"). The Escrowee shall hold the proceeds thereof in escrow in an IOLA account at Citibank N.A. (or as otherwise agreed in writing by Seller, Purchaser and Escrowee) until the Closing or sooner termination of this contract, and shall pay over or apply such proceeds to the party entitled to same in accordance with the terms of this section."
Subsection (a) of section 5.05 provided for sellers' sole remedy in the event of a default by purchaser, which, of course, is not what happened here:
"Seller and Purchaser agree that it would be impractical and extremely difficult to estimate the damages that Seller may suffer. Therefore, Seller and Purchaser hereby agree that the reasonable estimate of the total net detriment that Seller would suffer in the event of a default by Purchaser, and Seller's sole remedy (whether at law or in equity), shall be to retain the Downpayment as liquidated damages for all loss, damage and expense suffered by Seller, including without limitation the loss of its bargain.
"The payment to Seller of the Downpayment as liquidated damages is not intended as a forfeiture or penalty within the meaning of applicable law and is intended to settle all issues and questions about the amount of damages suffered by Seller in the event of a default by Purchaser."
Subsection (b) of the same section made separate provisions in the event that sellers failed to convey the property:
"If Seller shall refuse or fail to convey the Property as herein provided for any reason other than (1) a default by Purchaser, (2) or any other provision of this Agreement which permits Seller to terminate [*4]this Agreement or otherwise relieves Seller of the obligation to convey the Property, Purchaser shall elect as its sole and exclusive remedy hereunder either to (i) terminate the Agreement and recover the Deposit; or (ii) enforce Seller's obligations to convey the Property by seeking specific performance unless specific performance is unavailable due to Seller's willful acts."
In J. D'Addario,the Court of Appeals used a cumulation of factors to assess whether the parties clearly "contracted around"' or "waived" CPLR 5001(a). The majority held that the "use of the terms 'sole remedy,' 'sole obligation,' and 'no further rights' by the parties, together with the provision for interest on the escrowed sum, was sufficiently clear to establish for purposes of this transaction that interest paid at the statutory rate was not contemplated by the parties at the time the contract was formed" (20 NY3d at 118 [emphasis added]). Defendants and Supreme Court overlooked that the nonbreaching party in J. D'Addario was only found to have waived CPLR 5001 (a) because in that transaction, where it was the purchaser of the property who breached the contract of sale, not the sellers as was the case here, the parties had designated in their agreement (1) a sole remedy of (2) a liquidated sum, that (3) included compensation for the lost use of that money over time, and (4) explicitly waived all further rights and obligations. The majority decision does not indicate that anything less would provide sufficient clarity to infer a waiver of prejudgment interest.[FN3] As to whether plaintiff purchaser in this case can be said to have waived its right to statutory interest, we look at each of the factors discussed in J. D'Addario.
Interest is not a separate remedy; rather, it is an essential part of any remedy. Prejudgment interest compensates the nonbreaching party for the "economic hardship associated with delayed judgment, due to the time-value of money" (U.S Bank N.A. v Dexia Real Estate Capital Markets, 2014 WL 4290642, *3, 2014 U.S. Dist. LEXIS 121132, *9 [SD NY, Aug. 28, 2014, No. 12-cv-9412 (SAS)], revd on other grounds 643 Fed Appx 48 [2d Cir 2016]). The election of a "sole remedy" may still waive prejudgment interest if the parties have designed that exclusive remedy to compensate the nonbreaching party for the lost use of its money by other means, but where that remedy does not include a substitute for statutory interest, CPLR 5001(a) requires an award of statutory interest (id.). Subsection (b) of section 5.05 of the contracts between the parties here identifies specific performance or termination of the agreement and return of the downpayment as purchaser's sole and exclusive remedy. While this restricts plaintiff's potential remedies, by itself it has no bearing on the availability of statutory interest.
By designating as plaintiff purchaser's sole and exclusive remedy the return of its downpayment, subsection (b) of section 5.05 of the contracts limits damages [*5]to the liquidated sum of plaintiff's downpayment. This Court's direction in IHG HARLEM I, "to delete the language about a trial of damages [in Supreme Court's May 18, 2020 order] and direct a return of the deposits to plaintiff as liquidated damages under the terms of the contracts" (200 AD3d at 417) does not preclude the inclusion of statutory prejudgment interest in the final judgment. Interest may be awarded on liquidated damages and has been for over a century (see e.g. Seymour v Hovnanian, 211 AD3d 549, 553 [1st Dept 2022]; Shubert v Sondheim, 138 AD 800, 806 [1st Dept 1910]). Mere use of the term "liquidated damages" neither precludes nor waives the application of CPLR 5001 (a).
Where the parties to a contract have fashioned an exclusive remedy of a liquidated sum that includes bank interest, or another form of compensation for the time-value of money, an award of statutory interest would result in a windfall to the nonbreaching party. We held in Ithilien Realty Corp. v 176 Ludlow, LLC (139 AD3d 582[1st Dept 2016]), that the nonbreaching party was not entitled to statutory prejudgment interest where "[t]he contract's terms, requiring that the down payment be placed in an interest-bearing account, so that the party entitled to the down payment would receive compensation for the deprivation of its use of the money in the form of accrued interest, were sufficiently clear to establish that interest paid at the statutory rate was not contemplated by the parties at the time the contract was formed and that the amount escrowed, including interest earned, should be the exclusive remedy to the wronged party" (id. at 583 [emphasis added]).[FN4] In J. D' Addario, the "contract required that the down payment be placed in an interest-bearing account, so that the party entitled to the down payment would receive compensation for the deprivation of its use of the money in the form of bank-accrued interest" (20 NY3d at 118).
It is determinative here that the parties to the contracts made no such provision for the lost use of their money. Section 2.03 of the contracts provides for the funds to be held in escrow, but the escrow account specified is an interest on lawyer account (IOLA).[FN5] While every lawyer in the state must maintain an IOLA and use it for qualifying funds, the clear exception is that a lawyer may instead use a separate interest-bearing account that will generate, compute, and pay net interest to the client or beneficial owner (Judiciary Law § 497 [4][c]). As a result, all of the interest that accrued on plaintiff's downpayment over seven years was paid to the state IOLA fund, not to the prevailing party.
In these carefully drafted agreements there are no express limitations on liability that suggest the parties here intended to vitiate CPLR 5001(a). The parties in J. D'Addario agreed that in the event of purchaser's default its deposit shall "be permanently retained by Seller as Seller's sole remedy and Purchaser's sole obligation in any and [*6]all events . . . and no further rights or causes of action shall remain against Purchaser, nor shall Purchaser have any further rights under this Contract or otherwise, with respect to Seller . . . ." (20 NY3d at 116) [internal quotation marks omitted]. Similarly, in a very short memorandum decision, this Court in Sommer emphasized that "[t]he parties, by their written contract of sale, had agreed that the amount of the down payment . . . should represent the limit of the liability of the plaintiff purchaser for damages for default in performance of the contract" (28 AD2d 981). Here, subsection (b) of section 5.05 of the contracts contains no such language. Subsection (b), which applies when there is a breach by the sellers, is wholly distinct in its construction from subsection (a) which applies in the event of a breach by the purchaser. Under section 5.05 (a), seller's retention of the downpayment as "liquidated damages" for all loss, damage, and expense, including the loss of its bargain, is expressly "intended to settle all issues and questions about the amount of damages suffered by Seller in the event of a default by Purchaser." Subsection (b), by comparison, is devoid of the absolute language used in the subsection immediately preceding it and clearly is not intended to be the final word on damages in the event of default by the seller.
Despite electing a sole remedy and defining liquidated damages in the event of the seller's breach, the parties here did not provide for another form of compensation for loss of use of the purchaser's money nor expressly limit defendants' liability in the event of their default. Thus, unlike in J. D'Addario, it cannot be said that the parties clearly waived the provisions of CPLR 5001 (a). Plaintiff has been denied use of its money for seven years. Thus, the statutory prejudgment interest provided for in CPLR 5001 (a) must be awarded.
Pursuant to CPLR 5001 (b), "[i]nterest shall be computed from the earliest ascertainable date that the cause of action existed." Here, the relevant breach occurred on November 12, 2015, the date defendants set for the time of the essence closing which did not occur. Thus, a money judgment should be entered for statutory interest on the $626,250.00 downpayment, at the statutory rate of 9%[FN6] from November 12, 2015, through November 16, 2022, the date the downpayment was finally returned to plaintiff.
Accordingly, the judgment of the Supreme Court, New York County (Lynn R. Kotler, J.), entered November 14, 2022, in favor of plaintiff, and bringing up for review an order, same court and Justice, entered on or about March 1, 2022, which, to the extent appealed from, denied plaintiff statutory interest in directing the return of its deposits held in escrow, should be modified on the law, to award plaintiff statutory prejudgment interest on its deposits at the rate of 9% from November 12, 2015 through November 16, 2022, and otherwise affirmed, without costs. Appeal from aforesaid order[*7], should be dismissed, without costs, as subsumed in the appeal from the judgment.
Judgment Supreme Court, New York County (Lynn R. Kotler, J.), entered November 14, 2022, modified on the law, to award plaintiff statutory prejudgment interest on its deposits at the rate of 9% from November 12, 2015 through November 16, 2022, and otherwise affirmed, without costs. Appeal from aforesaid order, dismissed, without costs, as subsumed in the appeal from the judgment.
Opinion by Kapnick, J. All concur.
Oing J.P, Moulton, Kapnick, Higgitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 16, 2024

Footnotes

Footnote 1: Khalil Sikander is the sole member of both 406 Manhattan, LLC and BX524, LLC.

Footnote 2: Supreme Court's judgment did provide for an award of costs and disbursements in favor of plaintiff, but that award has not been appealed.

Footnote 3: The dissent did not find these factors to be determinative even when considered all together (20 NY3d at 119-121).

Footnote 4: As the Court of Appeals pointed out in J. D' Addario, "parties should make it a matter of routine to decide in advance whether statutory interest is to be paid on amounts held in escrow" (20 NY3d at 119).

Footnote 5: An IOLA is a specialized "unsegregated interest-bearing deposit account with a banking institution for the deposit by an attorney of qualified funds" (Judiciary Law § 497 [1]). The interest earned on an IOLA is paid directly by the banking institution to the state IOLA fund (Judiciary Law § 497 [6][c][i]). Qualified funds appropriate for an IOLA are "too small in amount or are reasonably expected to be held for too short a time to generate sufficient interest income to justify the expense of administering a segregated account for the benefit of the client or beneficial owner" (Judiciary Law § 497 [2]).

Footnote 6: CPLR 5004 (a) states that "[i]nterest shall be at the rate of nine per centum per annum, except where otherwise provided by statute."